Next case is 2010-1336 Judkins v. H.T. Wendell Fashions. Mr. Wilson, whenever you're ready. Good morning. If it pleases the court, my name is Arnie Wilson, and I'm here representing H.T. Wendell Fashions. The main issue on our appeal is the validity and infringement of the 120 patent, sometimes referred to as the double cell, sometimes referred to as the multiple cell window shading. There is no appeal by either party about the written claim construction that was given to the jury, so that's not an issue in this case. That claim construction specifically required that the front cell, which has an outer wall and an inner wall, be made from a single sheet of material folded back. In addition, the claim construction also construed tab to be that after you take those sheets and bring them to the back, they come together to form the tabs. Now, there's no dispute as to what the structure of the accused device is in this case. It's on page 21 of our brief. Let me ask you about that. You say there's no dispute. That's a diagram from a patent. I mean, how do we know that that's how the accused device was actually put together? Because we stipulated to allow that to be used as demonstrative evidence in court. It's not been challenged on the appeal, and we use that. I even cross-examined Mr. Judkins and their witnesses on it, having them agree that that was the structure. And if it's a demonstrative aid, it's not part of the record, is it? It's part from the standpoint of the written record, the descriptions that are in the transcripts. So you can understand the transcripts. This explains it. But also, you can also compare it. That's not really evidence, right? You can compare it to the evidence that is in the case, which includes, for example, that photograph of our design in our brief, as well as the examples that are given. Actually, the patent is in evidence, by the way. Were there any examples? Yes. Placed in evidence? Yes. How were they compared to the design that you submitted? By having the witnesses describe that they had the sample in their hand and say, yes, that was it, as shown in the drawing. And the sample that they had in their hand was the alleged infringing device? Yes. You're talking about one witness, right? Your expert? Our expert did it, and I believe also Mr. Judkins did it, and Mr. Corey did it as well. Mr. Corey specifically said that it was not representative. Did he not? No. I disagree. He said it was material. He said something, and then he went on and changed it. His testimony is in A552 through A554. And he did agree that that was the structure on cross-examination. But his disagreement was an attempt to say that it was made of the same material, if I remember correctly. Why wasn't the infringing product then compared to the actual claims as ciphered by the, as construed by the district court, instead of using an interim device to show the process? Well, no, the actual infringing product was in the hands of the witnesses while they were testifying, but also the demonstrative exhibit was up there. The problem is that the actual devices are about this, you know, the cell is about this big. It's about half an inch across, so it's not like something you can have explained to a jury. Somebody can't point to it and say, well, this is this part and this is this part. So what was done then is they had it in their hand while testifying, and then they could, you know, compare it and explain it with the demonstrative exhibit. Let me point you to A558 where the question was asked of Mr. Corey, is this figure an accurate representation of the Plaris double-cell product that you reviewed? And his answer is no, not at all. And he goes on to explain the basis for that opinion, and he said it's not the same at all. So Corey didn't testify to say that it was the same. You have your expert versus their expert saying the opposite, right? Your A558, you said? Yes. At what point? Line 8 through 16. Well, he said, then he goes on to explain the differences, and in a way that changes the function, for example, into a real shape, it changes the ability to be corded. He's talking about the difference being the cords present in his next explanation after that. So where do you say that he testified that this was the exact design? There's the cross-examination that appears in our brief where I laid out and walked him through, I believe, A553, discussing how it's made, and in particular, the multiple pieces. For example, at A554 at line 5, we are talking about the product. We begin talking about the product. And he specifically says, I'm not referring to the figure, and he disagrees with you that the figure is representative. And then I go on and ask, but in the product, I ask the product about the outer wall. And then I said the inner wall is made of two pieces. In the product, yes. So I specifically walked him through with the product. But the bottom line is we're supposed to be looking at a product, not a demonstrative aid that doesn't even go into evidence, right? You should look at the product, but nobody debates that the product does not look like that demonstrative exhibit. It's much easier to understand, quite frankly, than to try to look. You can look at the product. If you look at the product itself, you will see the very same thing. There's no debate about that. Okay, go on. There's no question about there's no document of equivalence appeal that was thrown out. There's also no question about the claim construction. And in particular, once again, also there's no debate about the tab. Once again, the cross-examination of Mr. Judkins himself on the tab and his admission that it does not go back as the claim construction goes. Unfortunately, the court below adopted a new claim construction in its JMOL, which was not in the claim construction in front of the jury. And at best, that might be considered some sort of a document of equivalence argument, which is specifically not part of this appeal. Well, you said that, but I went back and looked at his Markman order, and he does say at the end that cutting it into two sheets is not inconsistent with this single-sheet limitation. So I'm not sure how you say it's a new claim construction. All he said is that it could be consistent with that concept. What he's talking about, I believe, is the idea of, in effect, having one piece that's, in effect, put back together. What that would give you would be if you put it back together and you had two pieces coming back. In other words, it would be you take a piece like this, and then you put it back together. I mean, you may disagree with his interpretation of whether the evidence supports an infringement finding under this claim construction, but it's still the same claim construction. That's not the claim construction that was given to the jury. We have to look at what the claim construction was that was given to the jury. But in addition, very importantly, even if that somehow applies, that would mean there could be two sheets in that front cell, not three. We have three. So even with that, we don't infringe. And also, what you're talking about there is putting a process limitation into the claim. How it's made. And that clearly is not the case. The judge always... How is that process limitation placed into the claim? Because of the use of the number of sheets? No. The idea that somehow you can read in this idea of folding it and then cutting it, those are process steps. Well, isn't the single sheet a process step? No. The single sheet, like in the Newell case, the single sheet folded back. The word fold here is not a verb. It's a noun. It is in a folded state. That's folded. So there's no question that we have three pieces in that front cell. There's also no question that we don't meet the tab limitation. And the three pieces consist of the triangular sides of the cell itself? Yes. Or is it the common piece that goes between the cells? There's a piece that... Well, as shown on page 21, there's the color. You know, the three different colors are shown to make it clear where the different pieces are. But that's the structure. That there's three pieces. Under the claim construction, there has to be a single piece wrapped all the way around for the front cell. We have actually three pieces. We've made it very differently. But the other one is even if you accept this idea of these cut and paste and whatever, what never was dealt with at the JML was the tab. We don't come back and make the tabs come together from that sheet. That claim limitation is never met. Did you appeal on the basis of the absence of a tab? No, not the absence of a tab. It's that the claim construction specifically requires that the single sheet go back to form the tab. But you didn't argue on appeal that your product doesn't have a tab. We argued on appeal that we don't have a tab as the word tab is construed. Tab specifically requires that it's formed when the free ends of a single sheet folded back material are bonded together. As shown on page 39 of our brief, for example, marked with A and B, that tab doesn't get back there. We also questioned the validity based on the prior art, which in particular Cori, which shows side-by-side the idea of tabs with pleats. We also have the situation of the Judkins prior art patent, which specifically talks about the advantage of a pleat and a tab in the same device. We believe that that makes, that combination makes it. Well, as I understood it, the tab A and B, the two tabs were connectors, weren't they? You mean on page 39? On page 39. Right, but A, however, the claim construction requires that A go to the back to make it the tab. Right. A would either have to join B or would have to join the tab above B to meet the claim construction. And the tab above A on figure, the one that's on page 39 showing the green line, there's an A connected to the blue and there's a tab connected to the green up above. Is that B? Is that a separate tab? The one above it is a separate tab. It's a separate tab. But once again, A doesn't go to that tab either. It's separated out. Right. Because in the prosecution history, it was specifically argued that it was a single sheet going back to the back, distinguishing from the prior art, which had multiple pieces. We also believe that there was no showing that there was any derivation of the Ford, that the Ford references are indeed 102E references. Because of that... When you say there's no showing, I mean, there was a variety of pieces of evidence in the record that would at least justify a reasonable juror from reaching that conclusion, aren't there? No, there's no corroboration. This Court has repeatedly said there has to be corroboration. There is none. What about the notes and the drawing in the journal? The notes and the drawing in the journal, basically the only thing that's there is the idea of a tab and a pleat, which is existed in the Judgment's prior art already, 656. To have corroboration, we have to corroborate that that invention was disclosed. And there's not corroboration of that specificity. There's no evidence of that specificity. But it's ultimately the jury's conclusion to determine whether or not that invention was disclosed, correct? Yes. The concept of corroboration, it talks about the evidence, whether or not there's anything other than a pure inventor testimony. But this Court has said that there has to be corroboration, and if there's no corroboration... Right, but the corroboration is the documentation, correct? I don't believe it corroborates at all. Mr. Olson, you're all in the rebuttal time. We'll restore one minute of it. Thank you. Mr. Whitmer. Thank you, Your Honor. May it please the Court. I'm still having the image of Your Honor's football suit in my mind. I caution you, you've made a public disclosure of your invention now. So we'll look for the application shortly. This is a garden variety case with respect to the underlying appeal from H.T. There was conflicting evidence before the jury. The jury had, with respect to the infringement question, the jury had the accused device. The accused device was, the accused product was examined by both Mr. Judkins and Mr. Corey. What testimony supported the conclusion that the accused device satisfied the single-sheet limitation? I think we've cited in our brief, Mr. Corey's testimony considerably at, let's see, 556 to 558, for example, which we've cited, is where he talks about the, does the Polaris double-cell product have such an outer wall? And that's a question after the definition was given to him. He answers, answer, it does indeed. And then the question was put, the claim construction also says that an inner wall is formed when the same single sheet of material is drawn toward the back of the shade in order to form a tab opposite the pleat. Does the Polaris double-cell product have such an inner wall? And he answers, it does. Question, is that true even if it has multiple pieces? Answer, yes, in the case of the product, it's true. And that, Your Honor, is actually responsive to the distinction between the demonstrative and the product in terms of the distinction he was drawing. And Mr. Judkins- But that multiple sheet reference, isn't that inconsistent with Mr. Ford's claim construction? No, I don't think it is. And in respect of what Your Honor had said to Mr. Olson, what does single sheet mean? Must it always be a, must it be a single sheet forever and always? I don't think that's what the claim construction says. Certainly, I don't believe that the district judge believed in terms of his claim construction that the testimony was inconsistent because otherwise, in many respects, he would have granted the JMOL if- Well, he did specifically say in his post-trial orders that you went out of your way to ignore his claim construction. Well, what I think he said was that on time to time, and I'm not running away from what trial counsel did, I wasn't, I didn't try the case. I wasn't there exactly to know what had happened. I, like you, have only read the transcript in this context. I think there were a couple of occasions, and only a couple of occasions, when there was a suggestion that either questions were being asked or an argument was being made that strayed from the strict terms of the claim construction. But there is, and I think this is extremely significant, there was no objection made, even made, during closing argument when my client's trial counsel argued to the jury why there should be infringement. Nobody got up and said he's using the wrong claim construction. And certainly, the claim construction, Mr. Olson, is absolutely correct. Whether or not the claim construction that the judge did fit what we wanted in terms of a claim construction, that claim construction was the one that was read to the jury, that was the instruction that was given to the jury in writing that they took with them. They heard all the testimony. They had the claim construction on paper and as a result of the instruction that was given to them. They had the accused device. They heard all the testimony that H.T. put in with respect to this, and they nevertheless concluded that consistently with that claim construction that the accused product met all the limitations, single sheet being the principle one in which the fight was being made. So that from my perspective in reading this, my perspective in reading this is to say, okay, what was the evidence that was had? Well, the evidence that was had was the accused device, and I would point out specifically that it was not the accused device that the defendant's expert used. He just had a piece of fabric. He did not have the window covering itself. In his testimony, their expert was, admittedly, not my disparaging him, admittedly he was not a person of ordinary skill in the art of window coverings. A distinguished fellow who has good degrees, teaches what he teaches, gave his opinion, but not from the perspective of someone who had ever done anything in window coverings. What about H.T.'s argument that you actually just never did any meaningful discovery on the issue of how these things were really put together? You know, that's a very interesting point, Your Honor, which I've thought about a long time about this, and in some respects I've read the transcript carefully to see if there was any argument about burden of coming forward effectively. If this were a method claim case, your question to me would be a very, very pointed one, because in the method claim the burden would be on the patentee to prove the method, because that's what's being accused. But it is not the method that is being accused here, because it's not a method patent. It's a product patent. What was the burden on you to prove infringement? Indeed. Indeed. No question. And we did. We came forward with what is important in terms of proving infringement. We brought the device. We brought experts and people who are knowledgeable in the area who looked at the device, who read the patent claims as construed by the district court against the accused device, gave opinions, and then it went to the jury, the it being the accused device and all the other evidence, with the claim construction that the judge gave, and they came back with the conclusion of willful infringement in this case. Now, what was the use, and I put that in quotes for these purposes, what was the use of just talking about methods? Well, effectively, the defendant said, look, you can't make it with a single sheet. That's what he said, basically. But who has better control and access over how it's made? The defendant or we? Now, that's a rhetorical question in this context. If indeed, and this is the question that I've taken a long time to get up to, the question I had is, if I had tried the case, and I'm not criticizing my predecessor in this regard, because I've tried too many cases to do that, to criticize anybody when I wasn't actually there, I might have been tempted to say, I'd like a curative instruction. I'd like an instruction that says, if in fact the method of producing this piece of equipment is such that proves non-infringement, they should prove it. And since they haven't come forward, they haven't come forward, because it's not a method case where we have the burden of proving what the method is of producing it. If they haven't come forward with some affirmative evidence of how this is made that shows that it in fact can't be done in some way, so that contests the conclusions that were drawn by our people, then you, ladies and gentlemen of the jury, have a right to draw the inference that the reason that they didn't do that is because if they brought somebody in to say how it was made, it wouldn't help them. Effectively, a negative inference drawn from that. Now, that wasn't done in this case, and I'm not here to tell you why it was done or why it wasn't done and so on. But the reason I spend time in looking at that in this regard is because I think that there is an underlying intellectual rationale for why we're right and they're wrong and how to look at this. Both Mr. Judkins and Mr. Corey took the stand and said to the jury, I think there's a single sheet there. Know a lot about this business, know how these things are done, and can it be done? You bet it can be done, and we can show you how it can be done, and they both did in slightly different ways. I mean, I wasn't there, so I didn't see it, but as I read it, it didn't read exactly the same to me in terms of what they did and how they did it, but their conclusion was the same. It was a single sheet, and as Mr. Corey says... How do they show it was a single sheet? Well, they took a single sheet and manipulated the single sheet, eventually cutting it and so on and doing it, but they said it was a single sheet, which they then manipulated to create the device. And they came up with the same result. Yes, they came up with the same result, but not in a doctrinal equivalent sense. No, but the same result, showing the fact that a single sheet could do it. Correct, correct. And so that, in Your Honor's point, in terms of demonstrative evidence, that was one of the points I was going to make affirmatively, that demonstrative is not evidence. It's not evidence in the classic sense. But the demonstration that was made by our witnesses, separately, Mr. Corey and Mr. Judkins, demonstrated to the jury the logic of why this was a single sheet. And so, in a sense, and there was no argument made, my adversary is a very fine and aggressive lawyer and I have great fondness for him. He doesn't let arguments lie fallow that he may have available to him. Jury confusion was not among the arguments that is in any of his briefs. Let's say somehow that this demonstration confused them or an argument that was made to the jury in closing. So that I take away from all of this really quite, perhaps simplistically, but I think accurately, that this is an old-fashioned, you had your day in front of a jury, you made all your arguments, we made all of our arguments, the evidence was appropriately heard and considered, the judge gave a claim construction to the jury that was entirely 100 percent in accordance with his earlier Markman decision. The jury heard all that evidence, went in the room and did whatever magic they did and came out and said willful infringement. And for all the reasons that have existed from time immemorial about appellate courts looking at jury verdicts, this one should be affirmed. In respect of, I'd like to talk very briefly, if I may, because I see that my time is waning here on my cross-appeal, two very brief points. I think we've made the point with respect to the denial of enhanced damages and attorney's fees with respect to this case. I think fundamentally, if you look at all the read factors and consider them in the context of what is the purpose, as this Court has said on many occasions, what the purpose of enhanced damages and the shifting of the expense of litigation may be, that purpose has not been served in this case. But this is an abuse of discretion analysis, right? There's no doubt of that, Your Honor. There's no doubt. Do I know that, am I effectively Sisyphus? Yeah. But I think I've rolled the rock to the top of the hill and it's not going to roll down. Because in this circumstance, and I think all the cases talk about the totality. Read, I've always distrusted checklist kinds of things. I mean no disrespect for opinions that write that say consider this, consider that, and consider the other thing. These are not formulas. So that if there are seven factors, you have to have four of one before you can win. I don't see it that way. And I urge that I don't think the Court should see it that way. I think the judge did abuse his discretion. In this sense, I think, as an error of law, by failing to recognize what the totality of circumstances would be in this case. What is the lesson to a single individual who is an inventor who wants to enforce his patents? Many, many cases talk about how expensive patent litigation is. And even though I'm one of the beneficiaries of how expensive it is, the reality in the real world is that in this kind of a circumstance, you have to, you belly up to the bar in the old-fashioned expression with a knowledge that you have a real burden to carry. And what's the lesson in this case? You better find somebody who's prepared to stand behind you because in this case, because the lawsuit was brought almost immediately, the actual compensatory damages were very small. Well, no one is going to be able to interest a contingency fee lawyer, for example, or anybody else in making the investment in the litigation if in the end all you get is what we got here. Let me turn to another piece of your cross-page. I was about to shift to... Okay, the 634? Yes, that's what I was about to do, but please ask your question. Well, the question is what effect does the implied jury finding of derivation have with respect to that issue? Does it affect the 180 patent or the Canadian application? I'm sorry, Your Honor. I didn't mean to interrupt you. Go ahead. I didn't hear the end because I interrupted you. Does that affect the Canadian application? I'm not sure that it affects the Canadian application, but I think the derivation in many respects is a factual finding, which I don't think the district judge appreciated, and the 634 on its face has the Canadian application as a cited reference so that for a variety of reasons, I'm draining time here very quickly, for all the reasons we set forth in our brief, I think the district judge misapprehended the consequence of the jury's findings with respect to Ford's so-called prior art of the Ford's issues and that therefore his findings of the invalidity of 184. Well, that's my question. The derivation finding would apply equally to render the 180 not prior art? Is that what you're saying? I don't see how it could be otherwise, Your Honor. I mean, I understand Your Honor's question, I think, and I don't see how you could parse it out otherwise. If you have another question, I'll do it, but I'm running out of time. I'll ask your opponent the same question. Thank you, Your Honor. Thank you, Your Honor. I did reserve one minute or I have 40 seconds or whatever I have left here. Mr. Olson, you have a minute? Can you start with that last question? I'm sorry? Can you start with that last question? Would you repeat the question, please? If we assume that the jury made a derivation finding as to the Ford patents, does that apply so that the Canadian application would not be prior art? No, because 102E does not allow you to remove a piece of prior art. If it's filed by another, it's patented by another, it's still prior art, whether it's derived or otherwise. It's like if I publish something, you invent something and I publish it, and if you don't file within a year, you've lost. I want to point out that the testimony, first of all, there's no evidence in the record of this cut and paste thing that Mr. Judkins did on the stands. There's nothing there. But in particular, I think it's very important to note he was not exposed. What do you mean there was no evidence? Wasn't it presented before the jury? It was presented before the jury, but he basically sat there and cut paper and whatever. There's nothing in the record to show what he did or how he cut it or there's no exhibit. But in particular, he was not explaining how the accused device was made. He was explaining how it could be made in his mind. Well, there's certainly testimony about what he was doing. Right. But that's all there is in the record. But in particular, Mr. Corey in his expert report stated that the accused devices were made according to the construction of the U patent, which is in evidence. So what Mr. Judkins was explaining was how you could use the same material, fold it and cut it and have it come out. This is the rejected claim construction. The judge specifically rejected this idea. Well, you start out with the same roll of material at the top. You put it together and you come out. That's what Mr. Judkins was doing there. That's why the judge in his JMLL complained about it. Once again, they were trying to ignore the claim construction. Now, the reference to our expert referring to the fabric and that not being an accused device, that is an accused device. It was part of the judgment. It was in the judgment. We paid damages because we sold that fabric. So there's no question what our expert was going at. And finally, I'd just like to say the judge was very careful in going through the read factors. And I think if you look at Seagate, it's very specific. This lawsuit was filed the day the patent issued. There could have been no pre-filing inquiry. There was no move for a preliminary injunction. The judge said below very much that we behaved the court properly. And so I don't believe the willful finding is there. I don't believe there's the support for award of attorney's fees or enhanced damages. Wait. He didn't set aside the willfulness conclusion. No, he did not. But I think you have to in view of Seagate. Okay. Thank you. Thank you. Thank you, Your Honor. I have 40 seconds, so I'll do it very quickly. I do believe, I don't believe that the distinction with respect to 102E is an appropriate one. I haven't thought about it in this context, but I don't think that's an appropriate one in terms of doing this. And as for the willfulness finding, Your Honor points out correctly that the trial judge who heard all the evidence did not set it aside, and quite candidly, as we've set forth in our brief, it comes with some ill grace that H.T. says, well, he was just a salesman. He was their representative. That's the person they put up to say, this is H.T. who's going to testify about this. And if one goes through the transcript with respect to what he testified to, Mr. Miles was, I say, blithely, if not deliberately, ignorant and relied upon the fact that there were other patents supposedly that covered the product. Lastly, to say that there's no evidence diminishes what testimony is. I said in my opening argument what it was that Mr. Judkins and Mr. Corey did. It was not contrary to the claim construction. If it had been, I'm sure Mr. Olson would have objected and the district judge could have ruled on it either to suppress the evidence or to strike testimony. He didn't. The examples that were used of how it could be done to show why the product is accused, infringed, is sufficient with respect to the pellets of evidence should be firm. Thank you, Your Honor. Thank you. The case is submitted.